FORGE v SMITH

Docket No. 107437. Argued April 7, 1998 (Calendar No. 5). Decided
July 14, 1998.

Norman Forge and NMF, Inc., brought an action in the Wayne Circuit
Court against Leonard Smith, Diane Smith, Thomas Faber, and
others, seeking enforcement of easement rights in a certain lot,
damages for breach of the easement, and innocent misrepresenta-
tion. The plaintiffs had leased three of six adjoining lots in the city
of Detroit owned by Thomas Faber and Diane Smith. The remain-
ing lots were leased to another tenant. The lease provided that
Forge was to contract with Leonard Smith for the construction of a
building on the property. Architectural plans included one of the
other tenant's lots as part of the building project, and a zoning
board of appeals order included the same lot in the legal descrip-
tion of the property. Forge's customers eventually used the lot for
parking. After the neighboring leasehold was assigned, the defend-
ants agreed to provide and installed curb blocks to prevent parking
by Forge's customers. The court, Roland L. Olzark, J., entered judg-
ment on a jury verdict for the plaintiffs, finding that they had
acquired easement rights to the lot in question by express grant.
Thereafter, the court granted the defendants' motion for judgment
notwithstanding the verdict. The Court of Appeals, TAYLOR, P.J., and
E. J. GRANT, J. (MURPHY, J., dissenting), affirmed in an unpublished
opinion per curiam, holding that the statute of frauds barred
enforcement of any agreement between the parties as a matter of
law (Docket No. 177588). The plaintiffs appeal.

In an opinion by Justice BOYLE, joined by Chief Justice MALLETT,
and Justices BRICKLEY, WEAVER, and KELLY, the Supreme Court held:

The plaintiffs failed to establish a claim as a matter of law.

1. An easement is an interest in land that is subject to the statute
of frauds. To create an express easement, there must be language
in a writing manifesting a clear intent to create a servitude. Any
ambiguities are resolved in favor of the use of the land free of ease-
ments. All owners of jointly held property must sign a contract con-
veying interest in the property; the absence of a signature by a co-
owner renders the contract void. Compliance with the statute of
frauds is reviewed case by case.

2. In this case, the lease contract, the only document signed by the owners of the property, does not grant any property interest in the contiguous lot; the only property interest granted is a clear and unambiguous leasehold interest in the three of the defendants' six lots leased by the plaintiffs. Contracts conveying an interest in land made by an agent having no written authority are invalid under the statute of frauds unless ratified by the principal. The building contract, signed by an agent of the owners of record, is insufficient to bind them. No distinct act of ratification was made by either co-owner with respect to the building plans, and the plans do not evince any intent to grant an easement. Likewise, the decision of the zoning board of appeals did not work to create an easement.

3. A claim of innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. While it is unnecessary to prove that the person making the representation had knowledge that the statements were false, privity of contract must be shown. The representations made by Leonard Smith to Forge were not sufficient to bind Faber and Diane Smith; there was no privity, and Leonard Smith did not have proper authority to bind them. A promise regarding the future cannot form the basis of a misrepresentation claim.

Justice CAVANAGH concurred in the result only.

Affirmed.

Justice TAYLOR took no part in the decision of this case.

*David J. Esper* for the plaintiffs-appellants.

*John J. Davey* for the defendants-appellees.

BOYLE, J. We granted leave to determine whether the trial court erred in granting defendants' motion for judgment notwithstanding the verdict because plaintiffs' claim of express easement failed to satisfy the requirements of the statute of frauds. We affirm the decision of the trial court because we find that the plaintiffs failed to establish a claim as a matter of law.

I

Diane Smith and Thomas Faber were co-owners of six contiguous lots in the city of Detroit.[1] Faber, Smith, and her husband Leonard Smith entered into a twenty-five-year lease with the plaintiffs for three of the six parcels, described as lots 22, 23, and 24. The lease provided that Forge was to contract with defendant Leonard Smith for the construction of a building on the property.[2] At the time plaintiffs entered into the lease, the other three parcels, described as lots 19, 20, and 21, were leased to another tenant named Susheel Bery.[3] Lot 21 was vacant and used for ingress and egress by Bery's customers.

Forge went to the architectural firm of Land S.E.A. Corporation to have the building plans prepared.[4] The plans included lot 21 as part of the project. Forge and Smith both deny providing the land description to Land S.E.A. Testimony revealed that Land S.E.A. normally educed this type of information from the client, who was Norman Forge.[5]

Leonard Smith submitted two applications to the city of Detroit for building permits. In these applica-

---

[1] Smith and Faber, who are brother and sister, owned lots 19 through 24.

[2] The building was to be built at the plaintiffs' expense and was to be used as a bar and grill. Leonard Smith started construction of the building. However, the work was completed by other contractors.

[3] Bery owned a tune-up franchise.

[4] Forge was referred to Land S.E.A. by Leonard Smith.

[5] Smith testified that when he saw that lot 21 was included on the plans, he called Forge and Land S.E.A. and told them that lot 21 was not included. According to Smith, the plans were revised to exclude lot 21. According to the testimony of Mr. Berlinghof, the architect who designed the building, the building was relocated on the revised plans, but the plans still included all four lots.

tions, he identified the location of the project as lots 22 through 24. The application also referred to the plans.

The project was also the subject of a zoning board of appeals decision and order. There was no indication in the record about who filed the application with the zoning board. The order named Leonard and Diane Smith as the owners and included lot 21 in the legal description of the property. The decision was recorded, although the record similarly does not indicate who recorded the decision.

Forge opened his business, known as the PX Bar and Grill, in December 1987.[6] Plaintiff Forge's customers parked on lot 21 for the purposes of ingress and egress to the bar.[7]

In June, 1991, the tune-up franchise went out of business. The lease was assigned to defendants Joseph Ascione, Jerry Ascione, and Harry Kief for the purpose of operating a car repair business. As part of the lease-assignment agreement, the landlords agreed to provide parking curb blocks to prevent Forge's customers from parking on lot 21.

After the blocks were installed, plaintiffs filed suit against Leonard Smith, Diane Smith, Thomas Faber, Harry Kief, Joseph Ascione, and Jerry Ascione, seeking declaratory relief to enforce easement rights to lot

---

[6] Forge testified that he had parking lines and parking berms installed on lot 21.

[7] According to the testimony of Mr. Bery, parking on lot 21 by bar patrons was a recurrent problem. Mr. Bery testified that he spoke to both Norman Forge and Leonard Smith about the problem.

21, damages for breach of the easement, and for innocent misrepresentation.[8]

A four-day jury trial was conducted in June, 1993.[9] The jury found that plaintiffs had acquired easement rights by express grant and awarded $505,517 in damages for interference with that right.[10]

The defendants brought a motion for judgment notwithstanding the verdict[11] or for a new trial.[12] The trial court granted the motion for judgment notwithstanding the verdict in a written opinion, holding that the evidence presented was insufficient as a matter of law to support the plaintiffs' easement interference claim. The court found that there was no evidence of signatures of all the owners that could be attributed to the plans, and further concluded that Leonard Smith's signature on the building permits could not constitute a written conveyance because there was no writing authorizing him to grant, assign, or surrender the property.[13]

---

[8] Forge brought suit against Smith for breach of the construction contract. Smith counterclaimed on the basis of the same theory. The jury found for Forge, and awarded him $98,470 in damages.

[9] Plaintiff Forge requested a preliminary injunction in December, 1991, which was denied. At the close of plaintiffs' proofs, the trial court granted defendants Kief's and Asciones' motion for directed verdict. After both parties rested, the trial court ruled that plaintiffs' innocent misrepresentation claim and the claims of easement by implication or necessity could not be submitted to the jury. The jury was instructed on the claim of express easement.

[10] The jury also found that defendant Leonard Smith breached the construction contract and awarded plaintiff $98,470. The jury found that plaintiff Forge was not liable for breach of the construction contract.

[11] MCR 2.610.

[12] MCR 2.611.

[13] The trial court further held that plaintiffs' alleged easement was not certain enough to satisfy the statute of frauds because the architectural plans did not indicate the extent of the lot's use. The court also found that the doctrine of partial performance was not applicable to the facts of this

The plaintiff appealed to the Court of Appeals, which affirmed two to one. In an unpublished per curiam opinion, issued September 17, 1996 (Docket No. 177588), the majority found that there were contradictory standards of review for judgment notwithstanding the verdict motions. Because the Court found that the trial court decision was proper under either standard, the majority found it unnecessary to determine which was the proper standard.

The Court of Appeals agreed that the statute of frauds barred enforcement of any agreement between the parties as a matter of law. The Court held that no easement rights were created because the lease did not grant plaintiffs any right to use lot 21, and the building plans were not approved by the landlords in writing as required by the lease. The Court agreed with the trial court that Leonard Smith's apparent approval of the plans was not binding on Diane Smith and Thomas Faber because there was no writing authorizing Leonard Smith to act on the landowner's behalf as required by statute.[14]

In addressing the innocent misrepresentation claim, the Court of Appeals found that the trial court reached the right result for the wrong reason. The Court agreed that the claim of innocent misrepresentation is a viable claim. However, the facts of the case

---

case because the plaintiffs' performance was already required under the lease.

[14] As to plaintiffs' partial performance claim, the Court of Appeals found that the use, striping, and installation of parking berms was not required under the lease. However, it agreed with the trial court that the plaintiffs' actions did not constitute partial performance. The Court held that the doctrine of partial performance did not work to negate the writing or signature requirements of the statute of frauds because the contract could not be performed within one year. The partial performance issue has not been raised in this Court on appeal.

precluded the granting of any relief. Any statements made by Leonard Smith were insufficient to bind the owners. The Court further held that plaintiffs could not reasonably rely on an oral grant of an easement without a writing authorizing the making of the grant. Lastly, the Court found that a promise regarding the future could not form the basis of a misrepresentation claim.

We granted leave to appeal. 456 Mich 905 (1997).

II

The issue in this case is whether the trial court correctly granted defendants' motion for judgment notwithstanding the verdict, finding that the statute of frauds barred plaintiffs' claimed easement interest. Resolution of the issue will turn upon application of the facts to well-settled law.

As a threshold matter, we reiterate that

> [t]he standard of review for judgments notwithstanding the verdict requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. . . . Only if the evidence so viewed fails to establish a claim as a matter of law, should a motion for judgment notwithstanding the verdict be granted. [*Orzel v Scott Drug Co*, 449 Mich 550, 557-558; 537 NW2d 208 (1995), citing *Wadsworth v New York Life Ins Co*, 349 Mich 240; 84 NW2d 513 (1957), and *Schutte v Celotex Corp*, 196 Mich App 135; 492 NW2d 773 (1992).]

Questions of law are subject to review de novo.[15]

---

[15] *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

III

The statute of frauds provisions applicable to the case at bar provide:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing. [MCL 566.106; MSA 26.906.]

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . . [MCL 566.108; MSA 26.908.]

An easement is an interest in land that is subject to the statute of frauds.[16] In order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude.[17] Any ambiguities are resolved in favor of use of the land free of easements.[18]

---

[16] *Troff v Boeve*, 354 Mich 593; 93 NW2d 311 (1958).

[17] *Id.* at 598. See also 25 Am Jur 2d, Easements and Licenses, § 18, p 586: "The intent to grant an easement, however, must be so manifest on the face of the instrument that no other construction can be placed on it. Thus, to create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license."

[18] *Methonen v Stone*, 941 P2d 1248 (Alas, 1997); *Martinez v Martinez*, 93 NM 673; 604 P2d 366 (1979); *Wing v Forest Lawn Cemetery Ass'n*, 15 Cal 2d 472; 101 P2d 1099 (1940).

All owners of jointly held property must sign a contract conveying an interest in the property; the absence of a signature by a co-owner renders the contract void.[19]

Rather than apply fixed rules for compliance with the statute of frauds, this Court has adopted a case-by-case approach. In *Opdyke Investment Co v Norris Grain Co*,[20] we stated:

> We decline to accept the defendants' invitation to adopt narrow and rigid rules for compliance with the statute of frauds. Instead, we affirm the standard espoused by Professor Corbin and adopted by this Court in *Goslin v Goslin* [369 Mich 372, 376; 120 NW2d 242 (1963)]: "Let us proceed, therefore, with a general consideration of what constitutes a sufficient note or memorandum. We may well start with this one general doctrine: There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found. . . . That is the rule of law to be applied with intelligence and discrimination and not like a pedant playing a game of logomachy."

Plaintiff contends that an express easement was granted on the basis of the signed lease, the construction agreement, the building plans, and the oral representations of the owners through Leonard Smith.

A

The lease contract, the only document signed by the owners of the property, does not grant any sort of

---

[19] *Fields v Korn*, 366 Mich 108; 113 NW2d 860 (1962).

[20] 413 Mich 354, 367-368; 320 NW2d 836 (1982).

property interest in lot 21. The only property interest granted in that document is a clear and unambiguous leasehold interest in lots 22, 23, and 24.

Where one writing references another instrument for additional contract terms, the two writings should be read together.[21] The Court must look for the party's intent within the contract where the words of a written contract are not ambiguous or uncertain.[22] While the lease does mention plans and specifications, it does not rely on these plans or specifications to furnish additional meaning.[23] In fact, one of the provi-

---

[21] In *Whittlesey v Herbrand Co*, 217 Mich 625, 628; 187 NW 279 (1922), quoting *Short v Van Dyke*, 50 Minn 286; 52 NW 643 (1892), the Court stated that " '[i]n a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract.' "

See also *United California Bank v Prudential Ins Co*, 140 Ariz 238, 258; 681 P2d 390 (1983). The Arizona Supreme Court held:

Although neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract. When the question of whether another paper or term has been incorporated by reference depends on the "exercise of speculation, surmise and conjecture" the court will refuse to rewrite the contract. [Citations omitted.]

[22] *Michigan Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64 (1941).
[23] Paragraphs 30 and 32 of the lease read as follows:

30. Tenant acknowledges that the construction of a building on said premises shall be made by Leonard Smith and paid for solely by Tenant and all plans and specifications for same shall be approved in writing by Landlord and paid for by Tenant. Tenant shall have the complete control over the operation, management and maintenance of said building during the term of this lease.

\*     \*     \*

32. Tenant shall present to Leonard Smith plans and specifications approved by Tenant and Landlord within ___ days from the date of execution of this lease, and Tenant shall obtain all neces-

sions relied on by plaintiffs required written approval of the plans by the landlord, which was never obtained.

B

The building contract entered into between Leonard Smith and Norman Forge does incorporate the terms of the building plans by reference. The contract clearly "refers for some of its terms to an extraneous document . . . ."[24]

However, the building contract is insufficient to bind the owners of record, Diane Smith and Thomas Faber, to whatever conveyances are made by the building plans. As an initial matter, the building contract is not signed by either Faber or Diane Smith.

Plaintiffs' claim that the owners of record are bound by the acts of their agent, Leonard Smith, similarly fails. MCL 566.106; MSA 26.906 clearly requires that authority to convey an interest in land be in writing. Contracts conveying an interest in land made by

---

sary building permits and Leonard Smith agrees to complete construction of said building within five months after building permits are delivered to him, barring any delays not within his control, such as strikes, acts of God, etc.

[24] *Whittlesey,* n 21 *supra* at 629. The provisions of the contract showing incorporation of the building plans include:

*Job Description:* Construction of restaurant at above location *according to architectural specifications* prepared by Land S.E.A. Corporation and approved by the city of Detroit.

*         *         *

L.C. Smith Construction Company agrees to build above described restaurant *according to blueprints* and in accordance with city codes.

Construction includes the building proper, interior & exterior specifications *as shown on print.* [Emphasis added.]

an agent having no written authority are invalid under the statute of frauds[25] unless ratified by the principal.[26] However, the record reveals no "distinct act of ratification"[27] taken by either Diane Smith or Thomas Faber with respect to the building plans. As noted above, the express language of the lease required that the building plans be approved by the landowners in writing.

C

Even if the building plans were found to be incorporated by reference to the lease, the plans do not evince any intent to grant an easement. As noted above, there must be language manifesting a clear intent to create a servitude. Where the intent to create an easement is not clear, the issue is to be resolved in favor of use of the land free of an easement.[28]

Likewise, the recording of the decision of the Detroit Board of Zoning Appeals did not work to create an easement.[29] Plaintiffs argue that the creation of the building plans and the recording of the zoning

---

[25] MCL 566.106; MSA 26.906. See also *Dickenson v Wright*, 56 Mich 42; 22 NW 312 (1885); *Baldwin v Schiappacasse*, 109 Mich 170; 66 NW 1091 (1896).

[26] *Detroit P & N R Co v Hartz*, 147 Mich 354, 364; 110 NW 1089 (1907).

[27] *Dickenson*, n 25 *supra* at 47. Because we find that there was no affirmative act of ratification, we need not address whether oral ratification is sufficient where the authorization itself must be in writing under the statute of frauds. See 72 Am Jur 2d, Statute of Frauds, § 389, p 913; *Turnipseed v Jaje*, 267 Ga 320; 477 SE2d 101 (1996); *Erb v Kohnke*, 121 Idaho 328; 824 P2d 903 (1992); *Moore v Adolph*, 242 Mont 221; 789 P2d 1239 (1990).

[28] See n 18.

[29] In *Kirchen v Remenga*, 291 Mich 94, 109; 288 NW 344 (1939), we held that where an original grantor created and recorded a plat that designated park land, "[t]he acknowledgment and recording of the plat had all the force and effect of an express grant."

board decision is "tantamount to the recording of a plat." Plaintiffs cite no authority that equates the recordation of a zoning decision to the recordation of a plat by a common grantor, designating public land, and we decline to so hold today. The zoning decision does not show any clear intent to establish an easement. Furthermore, there is insufficient evidence in the record which would satisfactorily prove that the defendant recorded the decision or supplied the zoning board with the land description.

D

Plaintiffs submit that, even if there are insufficient grounds to establish an express easement, the oral representations made by Leonard Smith to Norman Forge created a license to use lot 21.[30] The contention is that this license, coupled with his interest in lots 22 through 24, made the license irrevocable.

A license grants permission to be on the land of the licensor without granting any permanent interest in the realty.[31] While easements constitute an interest in real estate, licenses do not.[32] Because they are not considered interests in land, licenses do not have to comply with the requirements of the statute of frauds.[33]

While licenses are generally revocable at will, a license coupled with an interest is not.[34] However, a license coupled with an interest is a privilege "inci-

---

[30] Defendants do not disagree that the representations at most constituted a license; they simply contend that the license was revocable at will.

[31] 1 Cameron, Michigan Real Property Law (2d ed), § 6.2, p 189.

[32] *Id.*

[33] *Marshall v Heselschwerdt*, 304 Mich 664; 8 NW2d 871 (1943).

[34] *Id.*

dental to the ownership of an interest in a *chattel personal located on the land* with respect to which the license exists."[35] This privilege is distinguished from licenses incidental to an interest in land.[36] In order to be irrevocable, the latter license must constitute an easement appurtenant.[37]

The theory of easement by express grant was the only theory presented to the jury and the only theory preserved for review. Moreover, we hold that, under the facts of this case, no easement interest was created by operation of law.[38]

IV

Lastly, the plaintiffs claim that the trial court erroneously dismissed their innocent misrepresentation claim, holding that innocent misrepresentation was not a basis for a claim of damages. While the basis for the trial court's decision was error, we agree with the Court of Appeals that the right result was reached.

A claim of innocent misrepresentation is shown where a party detrimentally relies on a false represen-

---

[35] 5 Restatement Property, § 513, p 3121 (emphasis added).

[36] *Id.*, comment b, p 3122.

[37] *Id.*, p 3121. See also *Powers v Harlow*, 53 Mich 507, 513-514; 19 NW 257 (1884). The Court held that, even if the property interest at issue was deemed a license, it would be an irrevocable license because it was a necessary incident to the tenant's use of the leased land.

[38] A claim of prescriptive easement would fail because, at a minimum, plaintiff has failed to use lot 21 for the requisite fifteen-year prescriptive period. See MCL 600.5801; MSA 27A.5801. A claim of easement by necessity would fail because there is no true necessity, as plaintiff is not landlocked. See *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922). Finally, a claim of implied easement would also fail. A claim of implied easement arises where two or more tracts of property are created from a single tract, and the use of the servient estate for the benefit of the dominant estate is apparent, continuous, and necessary. *Rannels v Marx*, 357 Mich 453; 98 NW2d 583 (1959). In this case, the lots were already distinct at the time of the alleged grant, and there is no necessity.

tation in such a manner that the injury inures to the benefit of the party making the misrepresentation. While it is unnecessary to prove that the person making the representation had knowledge that the statements were false, it is necessary to show privity of contract.[39]

According to the first amended complaint, the misrepresentations consisted of Leonard Smith telling the plaintiffs that use of lot 21 would be open and available for use by Forge as a parking area, and as a means of ingress and egress from the plaintiffs' business during the term of the twenty-five year lease.

Plaintiff Forge is in privity of contract with defendant Leonard Smith, by the construction contract, and with defendants Diane Smith and Thomas Faber, by the lease. However, the representations were made by Leonard Smith only. These statements were not sufficient to bind Faber and Diane Smith because Leonard Smith did not have proper authority pursuant to MCL 566.106; MSA 26.906. As to defendant Leonard Smith, plaintiffs cannot claim to reasonably rely on an oral grant of lot 21 where Forge had knowledge of the presence of the other tenant on lot 21.[40] Here, Forge had the means to determine what, if any, interest the other tenant had in the lot. Also, plaintiffs did not show that Leonard Smith made a representation of past or existing fact. A promise regarding the future cannot form the basis of a misrepresentation claim.[41]

---

[39] *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 118-119; 313 NW2d 77 (1981).

[40] Forge testified that he was concerned about parking because of the other tenant.

[41] *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 554; 487 NW2d 499 (1992); *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976).

V

Because we find that plaintiffs' easement claim fails as a matter of law, we affirm the decision of the trial court.

MALLETT, C.J., and BRICKLEY, WEAVER, and KELLY, JJ., concurred with BOYLE, J.

CAVANAGH, J., concurred in the result only.

TAYLOR, J., took no part in the decision of this case.